**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT PICCARRETA, | |
| Plaintiff, | CIVIL ACTION NO. 3:17-CV-00451 |
| v. | (MEHALCHICK, M.J.) |
| CHIEF OIL & GAS, LLC, | |
| Defendant. | |

**MEMORANDUM OPINION**

Before the Court is a motion for summary judgment filed by Defendant Chief Oil & Gas, LLC ("Chief Oil") on October 30, 2019, in a personal injury action arising from Plaintiff's fall on steps owned by Chief Oil. (Doc. 76). For the reasons set forth herein, the Court denies Defendant's motion for summary judgment.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On March 13, 2017, Robert Piccarreta ("Piccarreta" or "Plaintiff") initiated the instant action by filing the original complaint against Stallion Oilfield Construction, LLC; Stallion Oilfield Services, Ltd; Stallion Oilfield Holdings, Inc.; and Chief Oil. (Doc. 1). The currently operative amended complaint (the "Complaint") was filed on April 5, 2017. (Doc. 8). On August 11, 2017, Defendants Stallion Oilfield Services, Ltd. and Stallion Oilfield Holdings, Inc. were dismissed, and on February 15, 2019, Stallion Oilfield Construction, LLC was dismissed. (Doc. 23; Doc. 60). The only remaining defendant is Chief Oil. (*See* Doc. 8).

As alleged in the Complaint, at the time of the incident, Piccarreta was employed by Mountain Energy Services, Inc. ("Mountain Energy") as a full-time frack tank attendant. (Doc. 8, ¶ 12). Mountain Energy was contracted to monitor, supervise, maintain, control, and

inspect the fluid levels in frac tanks which were leased and controlled by Chief Oil. (Doc. 8, ¶¶ 13, 16). Piccarreta submits that Chief Oil had the duty of keeping the frac tanks free from dangerous and hazardous conditions. (Doc. 8, ¶ 17). Piccarreta alleges that on December 30, 2014, he was directed to inspect the water level in a frac tank and that after this inspection he disembarked on a defective ladder attached to the outside of the tank causing him to slip, fall, and sustain severe and permanent back injuries, as well as mental anguish and embarrassment and humiliation. (Doc. 8, ¶¶ 18-19, 21).

Following a period of discovery, Chief Oil has moved for summary judgment. (Doc. 76). This motion has been fully briefed and is now ripe for disposition. (Doc. 78; Doc. 82; Doc. 83; Doc. 88).

II.     **MOTION FOR SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential).

III. **STATEMENT OF FACTS**

This factual background is taken from Defendant's statement of facts and accompanying exhibits. (Doc. 77). Plaintiff responded with his statement of material facts

3

pursuant to Local Rule 56.1 on March 25, 2020. (Doc. 85). As required by Local Rule 56.1, all material facts set forth in Defendant's statement will be deemed admitted unless controverted in Plaintiff's statement of material facts. Where Plaintiff disputes facts and supports those disputes in the record, as also required by Local Rule 56.1, those disputes are noted. In addition, the facts have been taken in the light most favorable to the Plaintiff as the non-moving party, with all reasonable inferences drawn in his favor.

The Complaint asserts one count of negligence against Chief Oil arising from a fall that allegedly occurred on December 30, 2014, while Piccarreta was descending down a set of steps attached to a "frac tank," a large portable tank holding fracking fluid, at a site owned and operated by Chief Oil.[1] (Doc. 77, ¶¶ 3, 4; Doc. 85, ¶¶ 3,4). Piccarreta claims that while descending the steps, the second step from the bottom ("Step Two") broke away on the outside, or railing side, causing him to stumble forward and injure himself. (Doc. 77, ¶ 5; Doc. 85, ¶ 5). Specifically, Piccarreta testified that the step on his right side[2] as he was descending "had disconnected itself from the railing, and [the whole step] swung down to the left … it came down almost to the next step," so that it was hanging on an angle from the left side of the staircase. (Doc. 77, ¶ 6; Doc. 77-1, at 3; Doc. 85, ¶ 6). He further testified that co-worker Daniel Davenport ("Davenport") arrived on scene and physically removed the entire second

---

[1] Plaintiff "denies" this statement; however, Plaintiff submits that his denial is because Defendant's alleged negligence includes failure to inspect, remove, and discover a dangerous condition, etc. (Doc. 85, ¶ 4). Taken as true, Plaintiff's response is not in conflict with Defendant's statement that Plaintiff's claim arises from a fall occurring on December 30, 2014. Such false denials are discouraged by the Court and will not be addressed going forward.

[2] To an individual looking at the step from the ground, the disconnection occurred on the left side. Therefore, the side of the failure is most often referred to as the left.

step by working that step up and down twice and pulling it off and placed it underneath the bottom step on the ground. (Doc. 77, ¶ 7; Doc. 85, ¶ 7). In his deposition, Davenport, however, denied seeing any damage to the second step of the stairway and, further, denied removing the second step.[3] (Doc. 77, ¶ 9; Doc. 85, ¶ 9). Davenport only observed a broken stitch weld on the front left corner of the first step from the bottom ("Step One"). (Doc. 77, ¶ 9; Doc. 85, ¶ 9).

Plaintiff's liability expert, Thomas Hay ("Hay") noted that there are four load-bearing "fillet" welds on each step of the frac tank stairway, one at each corner, along with other "spot" welds which are not load-bearing. (Doc. 77, ¶ 10; Doc. 85, ¶ 10). Hay reported that, of the four fillet load-bearing welds on Step Two, only the left rear weld failed, and that the left front fillet weld of Step Two was "still structurally sound" as of his inspection on June 4, 2019.[4] (Doc. 77, ¶¶ 5, 11, 12; Doc. 85, ¶¶ 5, 11, 12). Furthermore, Hay testified at his deposition that he saw no evidence of failure of either the front or rear fillet welds on the right side of Step Two. (Doc. 77, ¶ 13; Doc. 85, ¶ 13). The failure of the left rear fillet weld on Step

---

[3] Piccarreta cites to "Exhibit B," which is allegedly an interview Davenport gave to investigators, in support of his statement that Davenport could not remember which step was broken and that he placed a cone on the broken step. (Doc. 85, ¶ 8). This interview lacks the name of an interviewer, and the Court is aware of no deposition testimony or other circumstantial evidence which serves to authenticate it pursuant to Fed. R. Evid. 901. (Doc. 85-2, at 1-2). Furthermore, Davenport's statements in the purported interview appear to be hearsay inadmissible under Fed. R. Evid. 802. (Doc. 85-2, at 1-2). For these reasons, Exhibit B will not be considered for purposes of this motion. *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) ("Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration.") (concurring).

[4] Plaintiff submits that Hay's physical inspection of Step two revealed that the right rear fillet weld had failed, however Hay's deposition testimony contradicts this assertion. (Doc. 85, ¶ 10; Doc. 77-3, at 8).

Two "caused the step to displace at least 1" downwards at the back-left side of the step," and did not cause the step to completely break off from the frame on the railing side. (Doc. 77, ¶ 14; Doc. 85, ¶ 14). At no point did Hay state that the failure of the left rear fillet weld would render the step incapable of load-bearing, and he testified at his deposition that he read that the frac tank stairway at issue remained in use from the date of the incident through the date of his inspection on June 4, 2019. (Doc. 77, ¶ 15; Doc. 85, ¶ 15).

As for the cause of the weld's failure, Hay opined that without other evidence, rather based on his examination of the step alone, he could not tell on what day the failure occurred and it could have happened after the alleged fall date. (Doc. 77, ¶ 16; Doc. 77-3, at 13; Doc. 85, ¶ 16). Hay also testified that the physical evidence was consistent with Plaintiff's deposition testimony indicating that the left rear fillet weld failed on the day that Plaintiff reported the accident. (Doc. 77, ¶ 16; Doc. 77-3, at 13-14; Doc. 85, ¶ 16). Physically, Hay noted evidence of corrosion at the weld and hypothesized that it failed because "the step was loaded beyond the capacity of the weld connecting the step to the frame." (Doc. 77, ¶¶ 17-18; Doc. 85, ¶¶ 17-18). In his deposition, Hay testified that he could not definitively determine whether the corrosion occurred before or after the left rear fillet weld failed. (Doc. 77, ¶ 19; Doc. 85, ¶ 19). Additionally, Hay stated that he could not determine on what date the corrosion process began beyond stating that it was at least six months old at the time of his inspection. (Doc. 77, ¶ 20; Doc. 85, ¶ 20). Hay does not know what Step Two looked like prior to the day of the incident, except that he "believe[s] that we could possibly infer that similar conditions were present at step two as what was observed at step one [which showed rust]." (Doc. 77, ¶ 27; Doc. 85, ¶ 27). Hay testified that the time at which a particular part of the stairs would be subject to corrosion would depend at least in part on the thickness of the

protective coating (paint) on the stairs, but he did not conduct any measurement to determine whether the protective coating had been applied evenly across the stairs. (Doc. 77, ¶ 28; Doc. 85, ¶ 28).

As to detection, Hay reported that the fractured welds would have been "easily identified" upon routine visual inspection and structural assessment. (Doc. 77, ¶ 22; Doc. 85, ¶ 22). During his deposition, Hay clarified that "routine visual inspection and structural assessment" involved an initial visual inspection to determine if there was any sign of a problem, followed by a more detailed inspection if a problem was identified during the initial visual inspection. (Doc. 77, ¶ 23; Doc. 85, ¶ 23). Hay acknowledged that he is not aware of any eyewitness evidence regarding the condition of the second step prior to Piccarreta's fall other than Piccarreta's own deposition testimony. (Doc. 77, ¶ 24; Doc. 85, ¶ 23). Defendant's statement of facts states that Hay cannot identify the actual cause of the failure of the left rear fillet weld on the second step based on visual inspection. Plaintiff's statement of facts states that Hay's physical inspection and the testimony of the Plaintiff lead to his opinion and conclusion that the second step failed on the date of the Plaintiff's accident. (Doc. 77, ¶ 26; Doc. 85, ¶ 26). Hay's testimony indicates that he could "identify a couple different mechanisms" for what caused the failure by looking at the step, but could not pinpoint one cause. (Doc. 77-3, at 35-37). Hay also testified, however, that Step Two broke because it was overloaded and "the second source of the failure, besides the impact damage, would have been the observed corrosion and weld metal loss." (Doc. 85-3, at 3). Hay admitted that it was possible that the defect in the second step might not have been something that would be picked up by visual inspection. (Doc. 77, ¶ 29; Doc. 85, ¶ 29). Finally, Hay agreed with Chief Oil's expert's conclusions with regards to the physical evidence, including that the age of the weld

7

fractures could not be determined and that the second step did not break off in the way that Piccarreta testified that it did. (Doc. 77, ¶ 30; Doc. 85, ¶ 30).[5]

Defendant asserts that Piccarreta testified that there was nothing wrong with the second step prior to his alleged accident, where no part of this second step had appeared bent or damaged, it felt solid, it looked normal and it did not make any rickety-type noise or give any indication that would permit someone to perceive a problem. (Doc. 77, ¶ 25). Piccarreta denies this, and his deposition testimony is that he noticed that the step had given way prior to his stepping on it but that his reaction time was not quick enough to account for the failure. (Doc. 85, ¶ 25; Doc. 77-1, at 3).

There is no evidence before the Court that Chief Oil was aware of any alleged problem with the second step of the relevant frac tank at any time prior to or after Piccarreta's alleged accident, nor that Stallion, the lessor, was aware of any alleged problem with the second step of the relevant frac tank at any time during its lease of the tank to Chief or during its subsequent leases up to the present time. (Doc. 77, ¶¶ 31-33; Doc. 85, ¶¶ 31-33). Furthermore, Defendant submits that there is no evidence that any visual inspection of the second step of the frac tank prior to Plaintiff's alleged accident would have revealed any alleged defect in the step, even if we assumed such a defect existed. (Doc. 77, ¶ 34). Piccarreta disputes this, submitting that evidence exists that Chief Oil had a duty to remove the frac tank from service, as its steps created a dangerous tripping hazard. (Doc. 85, ¶ 34).

---

[5] Plaintiff "denies" this fact but fails to provide a citation to the record as required by Local Rule 56.1. (Doc. 85, ¶ 30). Plaintiff is reminded that a failure to cite to the record may result in the fact being "admitted." M.D. Pa. LR 56.1.

IV. **DISCUSSION**

    A. PLAINTIFF SUBMITS EVIDENCE THAT HIS INJURY WAS CAUSED BY A DEFECTIVE STEP

Defendant first asserts that it is entitled to summary judgment because Piccarreta cannot support his theory of causation. (Doc. 78, at 4-6). Plaintiff's claim is that he suffered his injury after falling down a defective staircase. (Doc. 8, ¶ 19). Defendant submits that Plaintiff's allegation that Step Two broke completely off on the railing side, as well as his claim that the step was subsequently ripped from the stairway and placed underneath it, were both contradicted by Hay (Plaintiff's expert) and Donovan (the individual who Plaintiff claims separated the step from the stairway). (Doc. 78, at 6). Defendant further asserts that "no one has provided any testimony or other evidence in this case that there was any observed damage to the second step of the incident frac tank stairway." [6] (Doc. 78, at 5). Defendant submits that these contradictions entitle it to summary judgment because no reasonable mind could differ in the conclusion that the step did not fail as Plaintiff alleges it failed. (Doc. 78, at 6). Plaintiff responds that Hay did corroborate his testimony in that the physical evidence indicates a failure of the welds *to some extent,* and that the step generally "failed" when Plaintiff stepped on it. (Doc. 82, at 7-8).

The elements of negligence which Plaintiff must establish are: "a duty to conform to a certain standard for the protection of others against unreasonable risks; the defendant's failure

---

[6] Contrary to Defendant's position, Plaintiff has provided evidence that there was observed damage to the second step of the incident stairway. *See* (Doc. 81-2, at 5) (Piccaretta testifying, "And it was the second step up … the right-hand side of the step had given way and I just – my reaction time wasn't quick enough to grip with my hand."); (Doc. 81-3, at 29) (Hay testifying, "Had [Chief Oil] conducted regular maintenance of these steps, the defects [] identified in step number two in [the] 2019 examination would have been discovered and Chief could have rectified them before Mr. Piccarreta's accident.").

to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff." *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348, 355 (Pa. 2018). It is the jury's function to determine credibility, weigh evidence, and draw inferences from the facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 455. Still, summary judgment is warranted if a jury could not reasonably find for the non-moving party given the evidence presented. *Anderson,* 477 U.S. at 255. Defendant submits that Plaintiff cannot establish a causal connection between its alleged conduct and the resulting injury because his claim that his fall was caused when Step Two completely broke off on the railing side has been disproven by uncontroverted expert evidence. (Doc. 78, at 5-6; Doc. 83, at 1).

Defendant asserts that Plaintiff's expert, Hay, "wholly contradicts [Plaintiff's] account of the incident." (Doc. 78, at 5). The record, however, does not clearly indicate that this assertion is accurate. Hay opines that only the left rear weld on Step Two failed, however his deposition testimony reflects his belief that this could be consistent with Plaintiff's testimony. (Doc. 77-3, at 6-8, 18-19). The potential discrepancy is addressed in the following excerpt from Hay's deposition, beginning with Defense counsel quoting Plaintiff's testimony:

> Q. "It was on – on my way down, it was on my right side," which would be the outer most part of the step on the right-hand side. "It literally gave way from the rail."
>
> A. Okay. So to intervene there, "literally gave way from the rail." So I don't interpret that as full disengagement from the frame. What I interpret that to be consistent with – I – based on how I'm interpreting this, I'm interpret this to be consistent with what I'm observing here. Because – like a couple things. Like, a trapdoor, to me, is something that rotates or pivots (indicating). So if it's still attached to the front, I see that kind of being a trapdoor… And then secondly, depending on how much weight is applied there, I can – this will disengage

> significantly. Maybe another inch or so more from this 1 inch that's shown in the picture. I don't see that being inconsistent with a trapdoor-type action. Kind of like a quick release. So I'll leave it like that for now. And if you have a further question, go ahead.
>
> (Doc. 77-3, at 18-19).

The evidence before the Court would support a finding by a reasonable jury that one load-bearing fillet weld failed: the weld on the left rear corner on the second step from the bottom. (Doc. 77-2; Doc. 77-3). This finding, supported by Plaintiff's expert, is not definitively inconsistent with Plaintiff's testimony. Given that there is a dispute of fact on the issue of causation, the Court is precluded from issuing summary judgment. *See Desvi, Inc. v. Continental Ins. Co.*, 968 F.2d 307, 410 (3d Cir. 1992) ("In deciding whether there is a disputed issue of material fact, the court must resolve doubts in favor of the non-moving party.").

Further, Defendant admits that Hay's opinion is that the left rear fillet weld failure caused the step to displace at least one inch. (Doc. 78, at 6). Defendant does not submit that a reasonable jury could not find that this displacement caused Plaintiff's injury, therefore summary judgment is not warranted on the issue of causation. (Doc. 78); *see* Celotex Corp., 477 U.S. at 323 (noting that the party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion"). Even if the expert testimony were inconsistent with Piccarreta's as to the extent of the step's failure, that inconsistency speaks to the witnesses' credibility rather than the cause of Plaintiff's injury. *See Kardibin v. Associated Hardware*, 426 A.2d 649, 654 (Pa. Super. 1981) (denying defendant's assertion that the cause of plaintiff's fall was unknown when plaintiff testified that defect in the sidewalk was two or three feet from defendant's window and plaintiff's daughter testified that the fall happened three or four feet from the window). A one-inch displacement in the

11

left-rear corner of Step Two could have still caused Plaintiff's fall. Therefore, whether the testimony is inconsistent or not, summary judgment is not warranted on this issue.

> B. A GENUINE DISPUTE EXISTS AS TO WHETHER CHIEF OIL BREACHED ITS DUTY OF CARE TO PLAINTIFF.

Defendant asserts that no evidence supports the necessary element that Plaintiff's fall was a result of an action, or inaction, of Chief Oil. (Doc. 78, at 7; Doc. 83, at 7). Both parties agree that this issue hinges on whether Defendant breached its duty by failing to inspect and discover the alleged defect in the stairway prior to Plaintiff's fall. (Doc. 78, at 7; Doc. 82, at 9-10). Defendant submits that it is entitled to summary judgment because Hay cannot say whether an inspection by Defendant prior to Plaintiff's accident would have revealed a defect in Step Two. (Doc. 78, at 7). Defendant supports this assertion with Hay's testimony that Defendant's initial inspection, if properly done, would have been visual and that the only eyewitness evidence addressing the condition of the step prior to Plaintiff's fall is Plaintiff's testimony that "no part of this second step had appeared bent or damaged, it felt solid, it looked normal and it did not make any rickety-type noise or give any indication that would permit someone to perceive a problem" when he had used it earlier that day. (Doc. 78, at 8).

Defendant also submits that Hay's opinion is not sufficiently definite. (Doc. 78, at 8). Hay's statement that one could "possibly infer" the same poor condition in Step Two as that observed in Step One on the day of the fall is too uncertain, according to Defendant. (Doc. 78, at 8). Further, Defendant asserts that Hay's inability to conclude from the physical evidence exactly why, how, or when the welds failed precludes a jury's finding that the Defendant breached its duty to discover the defect. (Doc. 78, at 8-9).

The duty of care owed to individuals by a possessor of land is dependent on the status of the individual. An industrial employee is considered a business visitor as long as he is on the property for a purpose directly connected to the business which the possessor conducts upon the land. *Geier v. Board of Public Education of the School District of Pittsburgh*, 153 A.3d 1189, 1199 (Pa. Cmwlth. 2017). Since Plaintiff was disembarking the stairs at issue after performing maintenance on frac tanks leased and controlled by Defendant for Defendant's own business, Plaintiff was a business visitor. *See Geier,* 153 A.3d at 1199. A business visitor is classified as an invitee. *Geier,* 153 A.3d at 1198-99. Pennsylvania uses the Restatement (Second) of Torts to determine the duty of a landowner with respect to invitees:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.
>
> *Zinn v. Gichner Systems Group*, 880 F.Supp. 311, 316 (M.D. Pa. 1995) (applying Pennsylvania law) (quoting Restatement (Second) of Torts § 343).

If reasonable care would reveal the condition, and the condition is such that the invitee is not expected to discover it himself, then the possessor is subject to liability for not discovering the condition. *Zinn,* 880 F.Supp. at 316. Defendant submits that Plaintiff has not presented evidence that reasonable care on the part of the Defendant would have revealed the condition. (Doc. 78, at 7-9).

Pennsylvania courts have generally favored allowing the question of reasonable care to go to a jury. *Starke v. Long*, 292 A.2d 440, 442 (Pa. Super. 1972); *Stais v. Sears, Roebuck & Co.*, 102 A.2d 204, 206 (Pa. Super. 1954). In *Starke*, lifeguard lessons were being provided at

13

a local pool when a plywood foot-board on a lifeguard platform gave way, causing the invitee to fall four and one-half feet to the concrete pool-side. *Starke v. Long*, 292 A.2d 440, 442 (Pa. Super. 1972). The plaintiff's expert witness testified that the design deficiency in the board which limited the amount of weight it could hold would not have been apparent upon visual inspection. *Starke*, 292 A.2d at 442. The trial court held that this testimony relieved the defendant of liability as the accident was not caused by a breach of its duty of care (visual inspection). *Starke*, 292 A.2d at 442. The Pennsylvania Superior Court reversed this decision, stating,

> The extent of the preparation which in the exercise of the property owner's duty of reasonable care should have been made in readying the pool equipment for use by plaintiff is an issue for the jury's determination, and it cannot be said as a matter of law that defendants' duties in this case stopped at a visual inspection.

*Starke*, 292 A.2d at 443.

The court went on to explain that the risk of danger involved could necessitate greater testing and a higher level of inspection for the defendant to meet its duty of reasonable care; it was up to a jury to decide what was reasonable. *Starke*, 292 A.2d at 443.

In *Stais*, a customer at the defendant's store caught her shoe on a loose piece of metal protruding from a stairway landing, causing her to fall down the stairs. *Stais*, 102 A.2d at 205. Citing a case where a restaurant customer slipped on a loose rubber step pad, the Pennsylvania Superior Court held that a jury considering all of the circumstances could find that the dangerous condition had existed for a sufficient length of time to amount to constructive notice. *Stais*, 102 A.2d at 206 (citing *Coxey v. Guala*, 171 A. 484, 486 (Pa. Super. 1934) ("If the pad was loose as described by the plaintiff, the jury might have inferred that it had existed a sufficient length of time to have charged defendant with constructive knowledge.")).

The court in *Starke* also held that the plaintiff did not bear responsibility to test the board for safety. *Starke*, 292 A.2d at 444. The court stated, "A possessor who holds his land open to others must possess and exercise a knowledge of the dangerous qualities of the place itself and the appliances provided therein which is not required of his patrons." *Starke*, 292 A.2d at 444 (quoting Restatement (Second) of Torts § 343). The plaintiff could properly assume that the possessor(s) of the premises had met their duties prior to his use. *Starke*, 292 A.2d at 444.

The evidence in the record before the Court demonstrates a genuine issue of material fact on this issue. Plaintiff's expert, Hay, has opined that a visual inspection performed by Defendant would have revealed the defect in Step Two which caused Plaintiff's fall.[7] (Doc. 77-3, at 26) (affirming the statement that "had Chief conducted regular maintenance of these steps, the defects [] identified in step number two … would have been discovered and Chief could have rectified them before Mr. Piccarreta's accident."). Hay bases this opinion on a picture of Step One from the day of Plaintiff's fall which shows corrosion breakdown, and, according to Hay, allows for the possible inference "that similar conditions were present at step two as what was observed at step one." (Doc. 77-3, at 27).

Defendant asserts that this opinion is couched in too much uncertainty. (Doc. 78, at 8). However, Hay's testimony thoroughly explains the similarities between the conditions of the two steps, and, though he uses the word possibly, opines only that the inference makes sense. (Doc. 77-3, at 26-29). As to both Step One and Step Two, Hay states, "I would weigh

---

[7] The fact that Piccaretta did not find anything wrong with the step prior to his fall is irrelevant. It was Defendant's, not Plaintiff's, duty to inspect the staircase for hazards. *See Starke*, 292 A.2d at 444. Such inspection should, of course, be more thorough than any observation made by the Plaintiff.

my opinion more towards the corrosion and loss of weld metal being the source of failure here versus the impact damage to the far step – far side of the step." (Doc. 77-3, at 28). Additionally, Hay opines on this issue in more certain terms in his report. Hay observed "lack of preventative maintenance," and states, "at the very least an inspection would have revealed the deficits on Step 2." (Doc. 77-2, at 3-4). Hay also concludes after examining the picture of Step One taken on the day of Plaintiff's fall, that "the failed weld, corrosion, and protective coating breakdown observed on the right-hand side of Step 1 is consistent with the failed weld, corrosion, and protective coating breakdown on Step 2," and that Hay's observation of the two welds "points towards negligence on Chief's behalf as Tank 27062's stairs were not maintained in such a manner as to prevent corrosion of the weld metal attaching the stairs to the frame." (Doc. 77-2, at 4). Hay proceeds to opine that a visual inspection and structural assessment would have revealed the fractured welds, and that there is consistency between the conditions of Step One at the time of Plaintiff's fall and the conditions he subsequently observed in Step Two. (Doc. 77-2).

Hay's discussion of the steps' similarities, without mention of reasons why the corroded condition of the welds on the first step would *not* imply a corroded condition of welds on the second step, show that his opinion is presented with reasonable certainty sufficient to defeat summary judgment. *See Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (noting that affirmative evidence must amount to more than a scintilla, but may amount to less than a preponderance, to defeat summary judgment); *see also MONY Life Ins. Co. v. Snyder*, 2017 WL 3233495, at *3 (M.D. Pa. 2017) ("An expert can use less definite language as long as she at some time during her testimony expresses her opinion with reasonable certainty."). In short, Hay's evaluation of the physical evidence of deterioration coupled with

Plaintiff's testimony of the location of the displacement allows for an inference to be drawn that reasonable care would have revealed welds which required repair. *See Zinn*, 880 F.Supp. at 316.

Plaintiff has presented sufficient evidence to raise a genuine dispute of material fact as to whether Chief Oil breached its duty of reasonable care. The level of preparation and inspection necessary for reasonable care in a situation such as this is a determination to be made by a jury. *See Starke*, 292 A.2d at 443. Further, as in *Stais*, the circumstances may allow for the implication of constructive notice. *Stais*, 102 A.2d at 206. Finally, Hay has provided evidence and opinion with enough certainty to create a triable issue of whether sufficient inspection would have revealed the physical damage which caused Plaintiff to fall.

V.  **CONCLUSION**

For the reasons set forth in this Memorandum Opinion, the motion for summary judgment (Doc. 76) is **DENIED.**

An appropriate Order shall follow.

Dated: July 15, 2020                                                                  *s/ Karoline Mehalchick*
                                                                                              **KAROLINE MEHALCHICK**
                                                                                              **United States Magistrate Judge**